# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PHILLIP J. LYONS,

    Plaintiff,

vs.

STATE OF NEVADA ex rel, c/o ORTIZ, et al.,

    Defendants.

Case No. 2:10-CV-00707-JCM-(GWF)

**ORDER**

Presently before the court is defendants' motion to dismiss (doc. #77). *Pro se* plaintiff Lyons has filed an opposition (doc. #82), and defendants have replied (doc. #84).

**I. Background**

Plaintiff Phillip Lyons filed a complaint alleging eleven civil rights violations occurred while Lyons was in state custody. Lyons alleges that these violations took place between May 9, 2008, and the present while Lyons has been housed at Nevada State Prison ("NSP"), Ely State Prison ("ESP"), and Southern Desert Correctional Center ("SDCC").

The eleven claims are as follows:

- Count 1 - Eighth Amendment cruel and unusual punishment, Fourteenth Amendment due process, NRS 209.371 - corporal punishment and inhumane treatment, NRS 212.020 - inhumanity to prisoners, and NRS 197.200 - oppression under color of office. This count is asserted against defendants Ortiz and Baker.

- Count 2 - Eighth Amendment cruel and unusual punishment, Fourteenth Amendment due process. This count is asserted against defendants Henley, Donat, Helling, and Skolnik.
- Count 3 - Eighth Amendment cruel and unusual punishment, Fourteenth Amendment due process, Fourth Amendment right against search and seizure. This count is asserted against defendants Sims, Gentry, Nielsen, Terance, Pope, Halstead, Palmer, Skolnik, and Cox.
- Count 4 - First Amendment retaliation, Fourteenth Amendment due process. This count is asserted against defendants Baze, Palmer, Vallaster, Terance, Soonwing, Gonzalez, and Helling.
- Count 5 - Eighth Amendment cruel and unusual punishment, Fourteenth Amendment due process. This count is asserted against defendants Dutton, Ritchie, Jones, Willis, Endel, McDaniel, Cox, and Skolnik.
- Count 6 - First Amendment retaliation, Fourteenth Amendment due process. This count is asserted against defendants Adams, Klein, Burson, Williams, Cox, Howell, Gibbons, Miller, Masto, and Skolnik
- Count 7 - Eighth Amendment cruel and unusual punishment and Fourteenth Amendment due process. This count is asserted against defendants Howell, Williams, Cox, Skolnik, Ferber, and Jones.
- Count 8 - First Amendment free exercise, Fourteenth Amendment due process, NRS 197.170 - extortion by public officer or employee. This count is asserted against defendants Burson and Cox.
- Count 9 - First Amendment freedom of speech, Fourteenth Amendment due process. This count is asserted against defendant Jones.
- Count 10 - First Amendment free exercise of religion, Fourteenth Amendment due process. This count is asserted against defendants Wilson and Burson.
- Count 11 - First Amendment freedom of speech, Eighth Amendment cruel and unusual punishment, Fourteenth Amendment due process. This count is asserted against defendants Burson, King, Skolnik, Cox, Williams, Howell, Dreesen, Gibbons, Sandoval, Miller, and Masto.

. . .

**II. Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

**III. Analysis**

As an initial matter, the court acknowledges that plaintiff's complaint was filed *pro se* and is therefore held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and

citations omitted). However, "*pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

*Count 1*

Count 1 stems from an incident in which Lyons was transported in a vehicle with two other inmates. All the inmates were forced to wear a "black box" restraint device while being transported. Lyons claims that the "black box" was not the usual type of restraint used during transports, and the device caused him great discomfort, bruising, and swelling. Lyons asserts that by using a "black box" restraint, the Officers Ortiz and Baker showed deliberate indifference which amounted to cruel and unusual punishment.

Generally, when a prisoner alleges that handcuffs are too tight or a certain restraining device should not have been used, the prisoner is making a claim of excessive force. In this case, however, Lyons claims that the use of the black box amounts to deliberate indifference to his health and safety. Deliberate indifference claims are applicable in situations where prisoners are denied access to medical care or where prisoners make claims against general prison conditions. "'[A]pplication of the deliberate indifference standard is inappropriate' in one class of prison cases: when 'officials stand accused of using excessive physical force.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). Because count 1 of the amended complaint focuses on the infliction of pain from the use of a certain type of restraint, the court construes this as an excessive force claim.

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Lyons has made no allegation that the use of the black box was not intended to maintain discipline. The allegation is only that the black box should not have been used because it caused too much pain.

. . .

Lyons also asserts three state law claims based on this incident.  NRS § 209.371 provides, "Corporal punishment and inhumane treatment of offenders are prohibited."  Restraining a prisoner's hands in order to transport him safely is not inhumane treatment or corporal punishment.  Lyons has not stated a claim under NRS § 209.371.

Lyons also asserts claims under NRS § 212.020 and NRS § 197.200.  Lyons does not specify how these statutes were violated.

NRS § 212.020 provides as follows:

> 1. A jailer or person who is guilty of willful inhumanity or oppression to any prisoner under the care or custody of the jailer or person shall be punished:
>
> (a) Where the prisoner suffers substantial bodily harm from the inhumanity or oppression, for a category D felony as provided in NRS 193.130.
>
> (b) Where no substantial bodily harm results, for a gross misdemeanor.
>
> 2. Whether or not the prisoner suffers substantial bodily harm, any public officer guilty of willful inhumanity is guilty of a malfeasance in office.

NRS § 212.020.

NRS § 212.020 is a criminal statute without a corresponding private right of action. *Mitchell v. Skolnik*, 2011 WL 3626598 at *9 (D. Nev. Aug. 11, 2011).  Accordingly, Lyons' claim is dismissed.

NRS § 197.200 provides as follows:

> 1. An officer, or a person pretending to be an officer, who unlawfully and maliciously, under pretense or color of official authority:
>
> (a) Arrests or detains a person against the person's will;
>
> (b) Seizes or levies upon another's property;
>
> (c) Dispossesses another of any lands or tenements; or
>
> (d) Does any act whereby the person, property or rights of another person are injured, commits oppression.
>
> 2. An officer or person committing oppression shall be punished:
>
> (a) Where physical force or the immediate threat of physical force is used, for a category D felony as provided in NRS 193.130.

      (b) Where no physical force or immediate threat of physical force is used, for a gross misdemeanor.

NRS § 197.200.

Just Like NRS § 212.200, NRS § 197.200 is a criminal statute without a corresponding private right of action. Accordingly, this claim is dismissed.

Because plaintiff's allegations do not establish a plausible claim for relief, count 1 will be dismissed without prejudice.

*Count 2*

Count 2 stems from the same events as count 1. Lyons asserts that defendants Skolnik, Henley, Donat, and Helling should be held liable because of their supervisory positions at the prison. Lyons claims that these individuals promulgated policies that led to constitutional violations. In the screening order, Lyons was informed that he would need to allege *how* these supervisors were connected to the black box incident in order to state a valid claim. Lyons failed to do so in the amended complaint.

In order to be held liable under 42 U.S.C. § 1983, a person acting under color of law must have personally participated in the deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Liability under [42 U.S.C. §] 1983 arises only upon a showing of personal participation by the defendant" in the alleged constitutional deprivation. *Id.* A person personally participates in such a deprivation by directly acting or failing to perform a legally-required act, and that act or omission causes the deprivation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Lyons has failed to allege that Skolnik, Henley, Donat, and Helling personally participated in the alleged constitutional violations in count 2. Count 2 is dismissed without prejudice.

*Count 3*

Count 3 arises from an incident in which Lyons and approximately thirty other inmates were transferred between prisons. Upon arrival, the prisoners were allegedly strip-searched outside in the cold. Lyons claims that these searches were performed while the inmates were within full view of each other. Defendants Sims, Gentry, Pope, Nielsen and Terance allegedly conducted or were present during the

searches. Lyons contends that there were warmer and more discreet locations available, yet the defendants chose to conduct the searches in a cold and public area.

Lyons includes Halstead, Palmer, Skolnik, and Cox in this count due to their supervisory positions at the prison. Lyons does not allege that these defendants participated personally in the events, and accordingly they will be dismissed. *Taylor*, 880 F.2d at 1045.

Lyons believes that this incident constituted cruel and unusual punishment in violation of the Eighth Amendment and an unreasonable search and seizure in violation of the Fourth Amendment.

While there may have been alternative locations to perform the searches, the fact that a search took place in the cold does not inherently mean that the Eighth Amendment has been violated. "The Constitution 'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Additionally, "only the unnecessarily and wonton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834. To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Id.*

Lyons never alleges that conducting strip-searches outside did not serve a legitimate penological interest. Additionally, Lyons never alleges that the strip-searches were conducted in order to harass him. Lyons alleges only that he was made uncomfortable by the searches and that there were other locations available. There is no allegation of a culpable state of mind as to any prison official. Because Lyons' allegations do not support all the required elements of an Eighth Amendment claim, count 3 is denied without prejudice.

*Count 4*

Count 4 arises from an incident in which defendant Vallaster confiscated Lyons' hot pot after accusing Lyons of altering its wiring. Despite Lyons' protests that he had not tampered with the wiring, Officer Vallaster refused to return the hot pot. Lyons informed defendant Vallaster that he would be filing a grievance, and Lyons asked that the hot pot not be disposed of until the grievance process had been completed.

. . .

1       At a later date, Lyons was at the location where the hot pot was being kept, in order to pick up
2  other items that he had ordered from the prison store.  While picking up the items, Lyons spoke to
3  defendant Soonwing, Vallaster's superior officer.  Lyons explained the disagreement he had with
4  Vallester, and Soonwing agreed to examine the hot pot.  Soonwing concluded that the hot pot had not
5  been altered and returned it to Lyons.
6       After receiving the hot pot from Soonwing, Lyons attempted to help a fellow inmate retrieve
7  property that had been seized by Officer Vallester.  Lyons and the inmate specifically asked defendant
8  Terance not to discard the inmate's property.  Lyons informed Terance that Lyons and the inmate would
9  be filing a grievance in order to have Soonwing inspect the confiscated material.  Terance allegedly called
10 Vallester and informed Vallester of Lyons' plan, and also informed Vallester that Soonwing had returned
11 Lyons' hot pot.
12      Upon hearing that Lyons was once again in possession of the hot pot, Vallester sent another
13 officer, defendant Gonzalez, to remove it from Lyons' cell.  Later that day, Vallester served Lyons with
14 a notice charging Lyons with violations including, *inter alia*, possession of contraband–specifically the
15 notorious hot pot.
16      In response, Lyons filed a grievance alleging that Vallester, Terance, and Gonzalez had acted in
17 retaliation due to Lyons' earlier grievance, Lyons' attempt to assist the other inmate, and Lyons'
18 complaints to Soonwing.  This grievance was denied at several levels, and the hot pot was never returned.
19      Lyons includes defendants Baze, Palmer, and Helling in this count, but he has failed to
20 demonstrate that they had any personal participation in the events.  Therefore, these defendants will be
21 dismissed from this claim.  *Taylor*, 880 F.2d at 1045.
22      Defendants argue that this count should be dismissed because Lyons does not have a substantive
23 right to a prison grievance process.  This is functionally non-responsive to the allegations put forward by
24 plaintiff.  Lyons' argument is that the retaliatory actions taken by the prison officers chilled his First
25 Amendment right to free speech.
26 . . .
27 . . .
28

1    Lyons fails to plausibly allege that Vallester charged him with possession of contraband out of
2  retaliation. In fact, there is no allegation that Vallester did not actually believe that the hot pot had been
3  tampered with. While it is conceivable that Vallester issued the charge in order to retaliate, the complaint
4  does not support this claim with sufficient allegations to make it plausible as required by *Twombly*.
5    Lyons' allegations do not rise above the speculative level, and therefore count 4 is dismissed
6  without prejudice.

   *Count 5*

8    Count 5 stems from an incident in which Lyons was strip-searched along with other inmates in
9  a cold hallway. While it refers to a different incident, this claim bears the same shortcomings as count
10 3. As stated above, Lyons never alleges that the search lacked a penological interest. Additionally, Lyons
11 never alleges that the officials acted with a culpable state of mind. Lyons has not supported this claim
12 with sufficient allegations, and this count will be dismissed without prejudice.

   *Count 6*

14   Count 6 stems from an incident in which Lyons was allegedly retaliated against for submitting
15 a grievance when his family was not allowed to visit due to a prison error. Lyons claims that in response
16 to his grievance, defendant Adams ordered defendant Klein to serve Lyons a notice of charges that neither
17 Adams nor Klein were authorized to issue. Lyons claims that only the assistant director of operations at
18 the prison can charge an inmate with the violations contained in the notice.
19   Lyons claims that Adams issued the notice of charges to retaliate against Lyons for his grievance.
20 Lyons also alleges that Klein was also involved in the retaliation as Klein was aware that Adams was not
21 authorized to issue major charges yet delivered the notice anyway. Lyons asserts that Adams and Klein
22 were aware that their retaliation would chill Lyons' First Amendment right to file grievances in the future.
23   Lyons also asserts that defendant Burson denied all of his appeals related to the above grievances.
24 Additionally, Lyons claims that Burson did not allow Lyons to appeal Burson's decisions to any other
25 officer. The charges were ultimately dropped after a disciplinary hearing.
26 . . .
27 . . .

Lyons fails to sufficiently allege that Adams issued the notice of charges out of retaliation. While it is conceivable that Adams' actions were retaliatory, the allegations in the complaint do not raise a plausible inference that Adams issued the charges for an improper reason. Therefore count 6 is dismissed without prejudice.

*Count 7*

The court already granted summary judgment in defendants' favor as to this claim. (Doc. #43). Upon consideration of Lyons' appeal, the Ninth Circuit affirmed the dismissal of count 7. (Doc. #60).

*Count 8*

Count 8 involves a policy that requires Muslim inmates to pay $1.25 to partake in the Eid al-Fitr feast, which celebrates the conclusion of Ramadan. However, the First Amendment is not violated by requirements that inmates pay for ceremonial religious meals that come at a greater expense to a prison. *See Banks v. Beard*, 2013 WL 5465165, at *10 (M.D. Pa. Sept. 30, 2013). Additionally, Lyons was not denied the Eid al-Fitr feast, and admits that he paid the fee and ate the meal. Accordingly, count 8 is dismissed without prejudice.

Lyons' NRS § 197.170 claim is also dismissed as it is a criminal offense, without a corresponding private right of action.

*Count 9*

Count 9 stems from an incident in which Lyons was denied access to the law library by defendant Jones. On the day in question, Lyons informed Jones that Lyons had an appointment at the library. Jones allegedly appeared bothered by the fact that Lyons needed to go to library so often, and asked for Lyons' identification card. Lyons explained to Jones that the library supervisor was in possession of Lyons' identification card because Lyons had been required to leave it with her in order to check out materials. Upon hearing this, Jones informed Lyons that Lyons would be issued a notice of charges for failure to carry an identification card.

Lyons informed Jones that he intended to file a grievance based on Jones' actions. Jones replied by placing Lyons in hand restraints. Lyons was transported to a sergeant's office and released from the restraints at the behest of defendant Torsky. Torsky walked Lyons to the law library, and a librarian

confirmed Lyons' story and returned Lyons' identification card. Lyons came back to his cell to find that it had been searched and ransacked by Jones. Lyons argues that Jones' retaliatory actions chilled his First Amendment rights.

Lyons' action of informing Jones that he would be filing a grievance was protected under the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004) (holding that prisoners have a First Amendment right to file prison grievances). Lyons asserts that Jones took adverse action in the form of restraining him and ransacking his cell in response to this protected conduct. The fact that Lyons was placed into hand restraints immediately after informing Jones that he would be filing a grievance raises a plausible inference of wrongdoing.

The fact that Lyons' cell was ransacked while he was restrained further demonstrates bolsters Lyons' allegations that the actions were retaliatory. Lyons alleges that these actions chilled his expression as he now believes that filing grievances will incite unwarranted disciplinary actions against him. Lyons' allegations raise a plausible inference that Jones' conduct did not serve a legitimate correctional goal. Lyons has plausibly alleged all the necessary elements to support this claim, and as a result, the court will deny defendants' motion to dismiss as it relates to count 9.

*Count 10*

Count 10 springs from an incident in which defendant Wilson allegedly yelled at a group of Muslim prisoners who were picking up meals during Ramadan. Lyons claims that this deprived Lyons of the ability to practice fasting, a tenet of his Islamic faith. Lyons never explains how being yelled at prevented him from fasting. These allegations fail to establish a plausible claim under the Free Exercise or Due Process Clauses.

Additionally, Lyons claims that Burson violated his rights by denying the grievance submitted as a result of this incident. Lyons has not alleged that Burson was personally involved in the incident. Therefore, this claim is dismissed without prejudice. *Taylor*, 880 F.2d at 1045.

. . .

. . .

. . .

*Count 11*

Count 11 alleges that defendants Burson, King, Skolnik, Cox, Williams, Howell, Dreesen, Gibbons, Sandoval, Miller, and Masto have failed to adequately train prison staff which led to the alleged constitutional violations discussed herein.

Lyons has failed to claim that the supervisory defendants have any personal connection to the events which led to the other counts in the complaint. Some of these defendants simply denied a grievance, and the others have no connection to the prison at all. Accordingly, count 11 is dismissed without prejudice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss (doc. # 77) be, and the same hereby is, GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that claims 1, 2, 3, 4, 5, 6, 7, 8, 10 and 11 are dismissed without prejudice.

DATED July 31, 2014.

_____
UNITED STATES DISTRICT JUDGE